## IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE

|  |  |  |
|---|---|---|
| **Erin Parker** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. _____** |
| **v.** | ) | |
| | ) | |
| **Please & Thank You, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

### COMPLAINT

Plaintiff Erin Parker ("Parker" or "Plaintiff") brings this Complaint against Defendant Please & Thank You, LLC ("Defendant") and states as follows in support:

### PARTIES

1. Plaintiff Erin Parker is a citizen of the State of Tennessee, and her address is 525 Crieve Road, Nashville, TN 37220.

2. Defendant Please & Thank You, LLC is a limited liability company organized in the State of California with offices in Nashville, Tennessee and Sacramento, California.

### JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to Tennessee Code Annotated § 16-11-101.

4. This Court has personal jurisdiction over Defendant pursuant to Tennessee Code Annotated § 20-2-222 because Defendant operates within the State of Tennessee, maintains a Tennessee office located at 1300 Clinton Street, #205, Nashville, TN 37203 and caused harm to Plaintiff in the State of Tennessee.

5. Venue is proper in this Court pursuant to Tenn. Code Ann. § 20-4-104 as all or a substantial part of the events or omissions giving rise to the cause of action accrued in Davidson County, Tennessee where Defendant maintains an office.

## BACKGROUND

6. Parker was an employee of Defendant from August 2022 until her separation from the company in March 2023. During her employment with Defendant, Parker used her own connections and capabilities to engage musicians and music festivals in marketing campaigns for the financial benefit of Defendant.

7. Defendant continually represented to Parker that her compensation was to consist of salary and commissions for deals she brokered for the benefit of Defendant but failed and/or refused to memorialize a final employment agreement with Parker.

8. As she continued to perform for the benefit of Defendant, Parker repeatedly requested a written compensation agreement to memorialize her employment agreement with Defendant, including the promised salary / commission-based compensation structure to which the parties originally agreed.

9. The need to memorialize in writing the terms of Parker's compensation with the Company became more acute as Plaintiff successfully negotiated and secured three sponsorship deals for Defendant from August 2022 – March 2023.

10. In early March 2023, Parker notified Defendant's owner, Edmond Meehan ("Meehan"), along with Brice Turner that she wanted to reach an agreement regarding the termination of her employment due to Defendant's failure to provide her with written confirmation of the terms of her compensation during her previous six months with the company.

2

11.  At that time, Parker had procured and was in the process of delivering to Defendant a significant twelve-month contract with the marketing agency, LST (the "LST Deal"). Parker brought this opportunity to her employment with Defendant as she had worked with LST previously.

12.  Meehan promised Parker Defendant would pay her a $100,000.00 commission minus the costs of closing the deal, which were approximately $24,000, for bringing the LST Deal to Defendant.

13.  Aware of Parker's departure from the company, LST notified Defendant that it would not agree to finalize the LST Deal with Defendant until Defendant agreed to pay Parker the commission owed her for bringing the LST Deal to Defendant. In response, Defendant told LST that Defendant "wanted (Parker) to receive the commission for the Hardy deal (LST Deal)."

14.  On March 13, 2023, Defendant presented Parker with a separation agreement that required Defendant to pay Parker the $100,000 commission for the LST Deal less Defendant's expenses of $23,514.44 for total payment of $76,485.56.

15.  Meehan executed the separation agreement on behalf of Defendant on or about March 13, 2023. Parker executed the agreement on March 16, 2023 (the "Separation Agreement").

16.  The Separation Agreement provides that "after the full execution of this agreement, Company will pay to you [Erin Parker] a check in an amount equal to Seventy Six Thousand Four Hundred Eighty Five Dollars and Fifty Six Cents (USD $76,485.56), less all applicable federal, state and local taxes (the 'Subject Payment'). The Subject Payment represents all monies owed to you in connection with the Subject Services (as defined herein)." (Separation Agreement, § 2(a)).

17. The Subject Services included Parker's brokering of the LST Deal during the course of her employment. (*See* Separation Agreement, § 6(b)).

18. The Separation Agreement required Defendant to pay Parker $76,485.56, less all applicable federal, state and local taxes (hereinafter referred to as the "Subject Payment") "within five (5) business day [sic] of Company's receipt of the related payment from LST." Separation Agreement, § 2(a).

19. Defendant had received the "related payment from LST" as expressly contemplated in § 2(a) of the Separation Agreement by April 2023.

20. Pursuant to Section 2(a) of the Separation Agreement, Defendant was required to pay Parker the Subject Payment within five (5) business days of receipt of the LST payment consistent with its representations to LST that it would pay Parker in order to secure the funds from which the Subject Payment was owed Parker.

21. Parker inquired regarding the outstanding Subject Payment with Defendant on several occasions.

22. In response to Parker's inquiries, on April 7, 2023, counsel for Defendant sent Parker a letter notifying her for the first time that Defendant was not making the Subject Payment "pending an investigation" and that Defendant had "reason to believe that you are in breach of Paragraph 6(h) and Paragraph 8 of the [Separation] Agreement."

23. The allegations in the April 7, 2023 Letter were without legal or factual merit and were manufactured for Defendant to keep over $76,000 in compensation owed Parker in addition to the significant revenue Parker procured for the company in bringing them the LST Deal.

24. Parker has not at any time breached Paragraph 6(h) of the Separation Agreement ("You shall not at any time take any action, or make any remarks orally or in writing, that may

4

harm or disparage the reputation of Clients, Company, an Affiliate or any Personnel.") or Paragraph 8 of the Separation Agreement ("You agree that for a one (1) year period following the date above, you will not directly or indirectly solicit or encourage any Company customer or employee (including Clients and Personnel that you had access to during your employment) to enter into or become the subject or any direct or indirect contractual or employment arrangement with you or with any third party, business or enterprise with which you are or may become directly or indirectly affiliated.").

25. On April 13, 2023, counsel for Parker sent counsel for Defendant a letter responding to the April 7, 2023 Letter, denying any breach by Parker of the Separation Agreement, and demanding provision of the Subject Payment.

26. To date, Defendant has refused to make the Subject Payment to Parker required under the Separation Agreement that Defendant drafted and presented to Parker.

27. Defendant acknowledged to Parker that she had earned the commission in discussions preceding her formal separation from the Company and promised to pay her the same.

28. Defendant also admitted to LST and Parker at that time that Defendant was only entitled to reimbursement of agreed-upon expenses (ultimately, $23,514.44) and that Parker was, otherwise, entitled to the full remaining commission (i.e. the Subject Payment).

29. Furthermore, LST made clear and P&T confirmed that the commission itself (less the expenses) was fully due and payable to Parker as a condition of LST's payment to Defendant in March 2023.

### COUNT I – UNJUST ENRICHMENT

30. The allegations in Paragraphs 1 – 29 are reincorporated in this Paragraph.

5

31. Defendant's refusal to provide Parker with the Subject Payment under the Separation Agreement renders the Agreement *void ab initio*.

32. In securing and delivering LST to Defendant as a client, Parker provided a measurable benefit to Defendant as acknowledged by Defendant both to Parker and LST.

33. Defendant appreciated and recognized the financial benefit to the company resulting from Parker's services in landing the LST Deal for the benefit of Defendant.

34. It would be inequitable for Defendant to retain the clear and significant financial benefits provided to the company through Parker's undisputed efforts to secure LST as a client of the company.

35. Defendant acted in bad faith in providing both LST and Parker false assurances of its intent to pay Parker the Subject Payment in order to lure LST into making the payment to Defendant under the LST Agreement – only for Defendant to almost immediately refuse to pay Parker her commission due less than one month later.

36. Parker is entitled to payment of $100,000 in damages as the reasonable value of her services for the benefit of Defendant.

37. Defendant is not entitled to the reimbursement of its expenses incurred under principles of equity in light of its wrongful conduct and misrepresentations both to LST and Parker in order to maximize the revenue it could earn under an agreement singularly secured by Parker for Defendant's financial benefit.

## **BREACH OF CONTRACT**

38. The allegations in Paragraphs 1 – 37 are reincorporated in this Paragraph.

39. In the alternative, the Separation Agreement, in which Defendant agreed to pay Parker the Subject Payment within five (5) business days of Defendant's receipt of the "related payment from LST," is a valid and binding Agreement.

40. Parker has fully complied with the terms of and has performed all obligations required of her under the Separation Agreement.

41. Defendant breached the Separation Agreement when it failed to deliver the Subject Payment to Parker within five (5) business days of receiving the "related payment from LST."

42. Despite Parker's efforts to obtain Defendant's compliance with the Separation Agreement, Defendant continues to be in breach of the Separation Agreement today.

43. The vague allegations in the April 7, 2023 Letter that Parker may be in breach of the Separation Agreement are false and were made in bad faith.

44. Parker has been substantially harmed and has suffered and will continue to suffer damages as the result of Defendant's breach of the Separation Agreement.

WHEREFORE Parker requests that judgment enter against Defendant as follows:

1. That the Court enter a judgment in favor of Parker and against Defendant for an award of $100,000 as the reasonable value of Parker's services on behalf of Defendant for Defendant's financial benefit;

2. Alternatively, that the Court enter a judgment in favor of Parker and against Defendant for an award of damages in the amount of $76,485.56, less all applicable federal, state and local taxes, to fully and fairly compensate Parker for Defendant's breach of the Separation Agreement;

3. That the Court award Parker her reasonable attorney's fees and costs incurred as a result of Defendant's breach of the Separation Agreement;

4. That the Court award Parker pre- and post-judgment interest; and

5.    That the Court award Parker such further relief as this Court deems just and equitable.

Respectfully submitted,


/s/ Chris L. Vlahos
Chris L. Vlahos (TBR#20318)
**VLAHOS LAW LLC**
1030 16th Avenue South, Suite 200
Nashville, Tennessee 37212
Telephone: (615) 400-3213
chris@vlahos-law.com

*Attorney for Plaintiff Erin Parker*

8